In re CRESTMARK OF PINELLAS
PARK, INC., Debtor.

CRESTMARK OF PINELLAS
PARK, INC., Plaintiff,

v.

PARKWAY NURSING HOME, INC.
and Lake Holiday Associates,
Inc., Defendants.

Bankruptcy No. 97–9489–8P1.
Adversary No. 97–654.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 14, 1997.

Camille J. Iurillo, St. Petersburg, FL, for Plaintiff.

Roberta A. Colton, Tampa, FL, for Parkway Nursing Home, Inc.

Jay Verona, St. Petersburg, FL.

Leonard S. Englander, Englander & Fischer, P.A., St. Petersburg, FL.

## ORDER ON PARKWAY NURSING HOME, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE, OR MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is the Motion to Dismiss Second Amended Complaint with Prejudice or Motion for Summary Judgment filed by Parkway Nursing Home, Inc. (Parkway). The Debtor, Crestmark of Pinellas Park, Inc. (Debtor), in its Second Amended Complaint set forth four separate claims in four separate counts. In Count I, consisting of forty-one separately numbered paragraphs, the Debtor seeks the turnover of funds claimed to be property of the Debtor's estate. In Count II, based upon an alleged unlawful eviction, the Debtor seeks the recovery of damages. In Count III, based upon tortious interference with contract, the Debtor seeks the recovery of damages. In Count IV, based upon the alleged conversion of the same funds which are subject to the turnover count, the Debtor also seeks damages.

Parkway contends that it is entitled to dismissal of the Second Amended Complaint, or alternatively, summary judgment based on the following: Parkway contends that Count I fails to state a claim against Parkway with the possible exception of the statement in Paragraph 34, alleging a conspiracy between Parkway and Defendant, Lake Holiday Associates, Inc. (Lake Holiday). According to Parkway, this allegation is a mere legal conclusion and is insufficient to state a claim against Parkway.

Parkway also contends that Count II equally fails to state a claim against Parkway because the alleged unlawful eviction is only charged against Lake Holiday and not against Parkway. As to Count II for tortious interference with contract, Parkway contends that the Debtor's allegation that this is a "core" proceeding was not made in good faith. This is because the claim is clearly a pre-petition tort claim and Parkway failed to allege that it had filed a proof of claim in this Chapter 11 case. Parkway contends that under the applicable Florida law, the Debtor failed to state a claim for unlawful eviction for which relief can be granted. Finally, Parkway contends that the characterization of Count IV for conversion as a "core" matter is also incorrect and that the claim is barred by the economic loss rule. Moreover, the funds allegedly converted were not the funds of the Debtor at any time.

### MOTION TO DISMISS COUNTS I AND II

■ The Count I claim for turnover does not seek relief against Parkway. The vague, non-specific allegation of an alleged conspiracy is insufficient as a matter of law. Clearly, the property sought to be turned over by the Debtor is not in the possession or control of Parkway. The claim of conspiracy has nothing to do with the turnover claim. Even if it were pled with sufficient specificity, the claim of conspiracy should have been pled in a separate count. Be that as it may, this Court is satisfied that the motion to dismiss Count I vis-a-vis Parkway should be granted.

■ The foregoing comments are equally applicable to the claim for unlawful eviction in Count II. Count II fails to allege that Parkway was involved in the alleged unlawful eviction in any way. Thus, Parkway's Motion is well taken and should be granted as it relates to Parkway with respect to Count II.

### MOTION TO DISMISS COUNT III (TORTIOUS INTERFERENCE WITH CONTRACT)

■ In order to place the Motion to Dismiss Counts III and IV and the alternative Motion for Summary Judgment in proper perspective, it should be helpful to consider the following undisputed facts as they appear from the record, including the exhibits and Affidavits on file.

Prior to October 24, 1996, Parkway owned and operated a nursing home facility, the Parkway Nursing Home, located in Pinellas County, Florida. On October 7, 1996, Parkway and Lake Holiday entered into an "Agreement for the Sale of Assets and Real Property" (Agreement). The Agreement provided for the sale of the Parkway Nursing Home to Lake Holiday. On October 24, 1996, the transaction was consummated and Parkway, as part of the purchase price, took back a promissory note in the principal amount of $1,350,000, secured by a first mortgage on the property, including an assignment of all rents and profits derived from the property sold. (Exh. C of Owen's Affidavit) At the time of the closing, the license to operate the facility was in the name of Parkway and Lake Holiday had not yet secured an Agency for Health Care Administration License (AHCA) and required a short term use of Parkway's license until Lake Holiday secured its own license.

It is without dispute that originally the Debtor entered into negotiations with Parkway for the purchase of the nursing home, but for unexplained reasons Lake Holiday was substituted as the purchaser. As part of this transaction, Lake Holiday entered into a Lease Agreement with the Debtor. Under the Lease Agreement, Lake Holiday leased the nursing home facility to the Debtor for an initial term of three years. In addition to setting forth the usual covenants customarily included in commercial leases, the Lease Agreement had provisions related to (1) events which would constitute a default under the Lease Agreement; (2) the effect of bankruptcy on the rights of the parties (Article XVIII); and (3) granting the Debtor the option to purchase the facility under certain specified conditions (Article XX). The Option to Purchase had to be exercised between September 30, 1996 and September 30, 1999, the term of the Lease Agreement. While the copy of the Lease Agreement attached to the Complaint as Exhibit B is signed by the Debtor, it is not signed by Lake Holiday. Whether or not the Lease Agreement was ever executed by Lake Holiday, it is clear that the Debtor took over the operation of the facility and continued to operate the facility until May 8, 1997, when Lake Holiday took possession of the property, changed the locks and effectively terminated the operation of the facility by the Debtor.

While in the Debtor's possession, the facility was operated by the Debtor under Parkway's license. All Medicare and Medicaid reimbursements for the services rendered to residents of the facility were paid to the licensee Parkway. Between November 1, 1996 and February 28, 1997, Parkway turned over the funds received to the Debtor. It is without dispute that no funds were turned over to the Debtor after May 1, 1997 through May 8, 1997 when the Debtor was removed from the facility and ceased its operation of the facility.

Disputes arose between the parties and litigation ensued between Lake Holiday and the Debtor involving the entitlement of the Medicare and Medicaid funds received by Parkway. At that time, Parkway was still the only licensee entitled to receive the funds. Both Lake Holiday and the Debtor made demands on Parkway for turnover of the funds received and held by Parkway. (Exh. E, Lake Holiday Demand). Due to the importance of keeping the doors open and preserving the operation, Parkway and the Debtor entered into an Agreement on March 7, 1997. Pursuant to the Agreement, Parkway turned over to the Debtor all monies held by Parkway in order to enable the Debtor to pay the outstanding bills of the facility. On March 31, 1997, Debtor's counsel advised the Debtor and Lake Holiday that Parkway's AHCA license expired effective March 30, 1997. (Exh. I).

After several unsuccessful attempts to preserve the continuity of the operation of the nursing home, in order to save the facility, on May 8, 1997, Lake Holiday took possession and took over the operation of the nursing home. Parkway turned over $70,000 in additional funds for the use and benefit of the nursing home.

These are the facts which appear from this record which according to Parkway warrant the dismissal of Count III. Alternatively, Parkway contends that these facts are not disputed and that it is entitled to summary judgment as a matter of law. Before dis-

cussing the applicable legal principles, it should be noted that on September 19, 1997, this Court entered an Order in this adversary proceeding and dismissed the Amended Complaint filed by the Debtor without prejudice to the Debtor to file its Second Amended Complaint. The Order provided that the Debtor was granted leave to assert in a second amended complaint, if one was filed, claims for either tortious interference and conversion or a claim for breach of contract consistent with the "economic loss rule."

Encouraged by this provision of the Order, the Debtor filed its Second Amended Complaint omitting a claim for breach of contract. Thus, the Debtor contends that the "economic loss rule" is no longer operative. To overcome and oppose this proposition, Parkway contends that the Debtor, by dropping a claim for breach of contract, may not escape the application of the economic loss rule. In addition, Parkway contends that in any event, with respect to the Debtor's claim for damages for intentional tortious interference, its conduct was justified if it were used to protect Parkway's own financial interest. *In re Captran Creditors' Trust,* 116 B.R. 845 (Bankr.M.D.Fla.1990). Thus, Parkway contends that if the conduct was to protect the financial interest that appears on the face of the complaint, a dismissal is appropriate. *Hudson Drydocks, Inc. v. Wyatt Yachts, Inc.,* 760 F.2d 1144 (11th Cir.1985).

As noted earlier, Parkway was the holder of the license for the operation of the nursing home until Lake Holiday ultimately obtained its own license. In addition, Parkway held a purchase money mortgage and security interest in the nursing home and its contents. It is not unreasonable to infer that if the continuing operation of the nursing home is negatively impacted and the license is revoked because of nonpayment of bills or for some other reason that Parkway's collateral would suffer an economically measurable decline. In light of the fact that this proposition is supported by the affidavit of George Owen, Jr., it is appropriate to consider the Motion as a motion for summary judgment pursuant to F.R.Civ.P. 12 as adopted by F.R.B.P. 7012(b)(6).

Considering this record, this Court is satisfied that notwithstanding that this Court's previous Order granted leave to amend the Complaint to plead either a tortious interference, conversion or breach of contract claim, the record supports granting summary judgment in Parkway's favor related to the claim asserted in Count III.

### MOTION TO DISMISS COUNT IV

The last claim under consideration is a claim of conversion which is set forth in Count IV of the Second Amended Complaint. Parkway contends that Count IV is barred by the economic loss rule and that the funds in question which were supposed to have been converted came into rightful possession of Parkway. This Court is satisfied that the Motion to Dismiss is well taken but not for the reasons urged by Parkway. The record leaves no doubt that the only entity who was legally entitled to receive Medicare and Medicaid funds was Parkway. The most that could be said on this record is that the Debtor had a potential claim for turnover of the funds while the Debtor was operating the nursing home. Thus, in essence, what the Debtor had was a claim, a chose of action based on an implied contract, which is, of course, not susceptible to conversion. This is so because the Debtor was not legally entitled to receive any payments from Medicare and Medicaid for reimbursement of the services rendered to the residents.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss Counts I, II and IV be, and the same is hereby granted and the claims set forth in those counts are dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that Parkway's Motion for Summary Judgment as to Count II be, and the same is hereby, granted.

A separate final judgment will be entered in accordance with the foregoing.